UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS  DIVISION

Cash, et al                                                    Civil Action No. 04-1648

versus                                                    Judge Tucker L. Melançon

Unocal Corp., et al                              Magistrate Judge C. Michael Hill

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by  defendant and
cross-claim plaintiff Lytal Enterprises, Inc. ("Lytal")  [Rec. Doc. 62] against Shaw
Global Energy Services, Inc. ("Shaw Global"), and Shaw Global's opposition thereto
[Rec. Doc. 73].  For the following reasons, the  motion will be denied.

### I.  Background

This case arises out of personal injuries allegedly sustained by plaintiff,
Michael Cash, while he was employed by Shaw Global.  Unocal retained Shaw
Global to provide painting and sandblasting on its fixed platform located within the
Ship Shoal Block 209 field.  Cash and the other Shaw Global workers were housed
at an adjacent platform and were transferred back and forth to the platform work
location via a  vessel owned by Lytal, the M/V LYTAL ANDRE.  Unocal contracted
Lytal to transport Unocal's contractors, including employees of Shaw Global, to its
various Unocal platforms located in the Gulf of Mexico.   Cash alleges that he was

injured on August 11, 2003 while being lowered in a personnel basket by a crane

stationed on the housing platform onto the M/V LYTAL ANDRE.  At the time of the

accident, the crane was being operated by an employee of Max Welders, Inc.[1]

Unocal and Shaw Global executed a Master Services Contract on July 28,

2003 ("MSC").   *R. 62-4.*  The terms of the MSC provide identical, reciprocal

indemnity agreements, requiring, in part, that each defend and indemnify the other as

well each company's contractors and/or subcontractors for all claims asserted by the

indemnitor's employees, whether the indemnitee's liability, if any, arises from

contract, tort or otherwise:

6.    INDEMNIFICATION

> 6.1    CONTRACTOR'S INDEMNITY, CONTRACTOR HEREBY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY AND ANY OF ITS PARENT, SUBSIDIARY, AFFILIATED OR RELATED COMPANIES, OR COMPANIES WITH WHOM ANDY OF THEM HAVE ENTERED SHARING AGREEMENTS, AND ITS AND THEIR LESSORS, NON-OPERATORS, JOINT VENTURES, PARTNERS, CO-OWNERS, OR CO-LEASSEES (AND THEIR LESSORS), AND CONTRACTORS AND SUBCONTRACTORS OF EVERY TIER (OTHER THAN CONTRACTOR AND ITS SUBCONTRACTORS OF EVERY TIER WHICH ARE HEREAFTER REFERRED TO

---

[1] Max Welders, Inc. filed a motion for summary judgment identical to Lytal's motion which Shaw Global also addressed in its opposition.  *R.111.*  As Max Welders, Inc. was voluntarily dismissed by the parties to this action, *R. 115,* Max Welders, Inc.'s motion is therefore moot.

COLLECTIVELY AS "CONTRACTOR'S SUBCONTRACTORS"), AND THE RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SERVANTS, HEIRS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS OF ALL OF THE FOREGOING (COLLECTIVELY REFERRED TO THROUGHOUT THIS CONTRACT AS "COMPANY GROUP"), IN EACH AND EVERY CASE, INCLUDING ANY CASE IN WHICH AN INDEMNITEE HEREUNDER MY BE ALLEGED OR PROVEN TO HAVE BEEN NEGLIGENT (INCLUDING BUT NOT LIMITED TO ACTIVE, PASSIVE, SOLE, JOINT, CONCURRENT, COMPARATIVE, CONTRACTUAL AND GROSS NEGLIGENCE), OR OTHERWISE LEGALLY LIABLE (WITH OR WITHOUT FAULT OR UNSEAWORTHINESS OR DEFECT, WHETHER OR NOT PRE-EXISTING EXECUTION OF THIS CONTRACT).  FROM AND AGAINST ANY AND ALL LIABILITY OR DAMAGES INCLUDING, WITHOUT LIMITATION ANY LOSSES, DAMAGES, CLAIMS. LIENS, PUNITIVE AND EXEMPLARY DAMAGES, EXPENSES, COURT COSTS, ATTORNEY'S FEES, FINES, PENALTIES, JUDGMENTS AND SETTLEMENTS (HEREAFTER REFERRED TO COLLECTIVELY THROUGHOUT THIS CONTRACT AS "CLAIMS") DIRECTLY OR INDIRECTLY ARISING OUT OF ON IN CONNECTION WITH THE FOLLOWING:

. . . .

B.    ANY PERSONAL OR BODILY INJURY, ILLNESS, DISEASE, OR DEATH TO CONTRACTOR'S EMPLOYEES, INVITEES OR THE EMPLOYEES OF CONTRACTOR'S SUBCONTRACTORS, DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH ANY OPERATIONS OR GOODS AND SERVICES UNDER THIS CONTRACT, INCLUDING, WITHOUT LIMITATION, ANY LOADING OR UNLOADING, INGRESS OR EGRESS, CARGO OPERATIONS, AND/OR THE PRESENCE OF ANY INDIVIDUAL ON ANY VESSEL. PLATFORM OR OTHER

> PREMISES OR AT ANY WORKSITE, REGARDLESS OF
> HOW, WHEN, OR WHERE SUCH INJURY, ILLNESS,
> DISEASE OR DEATH OCCURS....

*R. 62-4, Master Services Contract, ¶ 6.1.*[2]

Plaintiff filed this suit against Unocal, Max Welders and Lytal  seeking

recovery for the injuries that he allegedly sustained when he was transferred from the

housing platform onto the deck of the vessel. *R. 1*, *35*.  Shaw Global intervened in the

suit for the medical expenses and benefits paid to Cash under the Longshore &

Harbor Workers' Compensation Act.  *R. 16*.  Lytal filed a cross-claim against Shaw

Global seeking defense and indemnity and insurance coverage[3] for Cash's claim

pursuant to the indemnity provision contained in the Unocal/Shaw Global  MSC.  As

stated in the foregoing, the indemnity agreement requires Shaw Global to defend and

indemnify Unocal and its contractors and subcontractors for any claim brought

against Unocal by a Shaw Global employee like Cash.

Lytal filed this motion for summary judgment directed at the enforceability of

---

[2]  Paragraph 6.2 of the Master Services Contract contains an identical provision except that the word "Company" is substituted for "Contractor."

[3]  Under the terms of the Master Services Contract, Shaw Global was obligated to name Unocal and its subcontractors,  as additional insureds on the applicable policies of insurance.  *R. 62-4, ¶ 8.1.*  Subsection G of the LOAIA provides that any provision "which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section shall be null and void and of no force and effect." La. R.S. § 9:2780(G).  As neither party addresses subsection G of the LOAIA, the Court will not address whether or not the concomitant insurance obligations contained in the Master Services Contract are valid.

the Unocal/Shaw Global indemnity provision.   Shaw Global opposes the motion and

argues that Lytal's demands for indemnity should be dismissed because the Louisiana

Oilfield Anti-Indemnity Act ("LOAIA") renders the indemnity provisions null and

unenforceable.   Lytal argues that the LOAIA does not apply and that the indemnity

provisions contained in the Unocal/Shaw Global MSC are enforceable under

maritime law.

## II.  *Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions

and affidavits show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc).  Initially, the party moving

for summary judgment must demonstrate the absence of any genuine issues of

material fact. When a party seeking summary judgment bears the burden of proof at

trial, it must come forward with evidence which would entitle it to a directed verdict

if such evidence were uncontroverted at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986).  As to issues which the non-moving party has the burden of proof at trial,

the moving party may satisfy this burden by demonstrating the absence of evidence

supporting the non-moving party's claim. *Id.* If the moving party fails to carry this

burden, his motion must be denied. If he succeeds, however, the burden shifts to the

non-moving party to show that there is a genuine issue for trial.[4] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial.  *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).  The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986);  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

---

[4]Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325.  To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III.  Analysis

At issue in this case is whether Louisiana state law, specifically the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), applies to the MSC under which plaintiff was working at the time of his injury.  As a threshold matter, the Court must decide whether the MSC qualifies as a maritime contract.  If so, general maritime law will be applicable and the defense and indemnity provisions contained in the MSC will be enforceable as written, since indemnity agreements, even those which seek to indemnify a party for its own negligence, are enforceable under admiralty law.  *See Johnson v. Seacor Marine Corp.*, 404 F.3d 871 (5th Cir.2005).  If the Court finds that the MSC is not a maritime contract, then Louisiana law applies as surrogate federal law, and it must be determined whether the Louisiana Oilfield Anti-Indemnity Act applies to preclude the indemnity agreements in the Unocal/Shaw Global MSC. *In re BSI Drilling & Workover, Inc.*,  137 F.3d 1351 (5th Cir.,1998).  The Louisiana legislature, in passing the Louisiana Oilfield Anti-Indemnity Act, La.R.S. 9:2780,

declared indemnity provisions which purport to indemnify a party for its own negligence null and void and against the public policy of Louisiana.[5] Thus, whether the indemnity claim is enforceable turns on the nature of the MSC in the first instance, and the applicability of the LOAIA in the second. *Jones v. Berwick Bay Oil Co., Inc.*, 697 F.Supp. 260, 265 (E.D.La.,1988).

The parties do not dispute that the Unocal platforms were located on the Outer Continental Shelf. In determining whether maritime or state law would apply in an action arising under the Outer Continental Shelf Lands Act ( "OCSLA"), the Fifth Circuit has directed trial courts to apply the three-part test formulated in *Union Texas Petroleum Corporation v. PLT Engineering*, 895 F.2d 1043, 1047 (5th Cir.1990):

> (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto);
>
> (2) Federal maritime law must not apply of its own force; and,

---

[5]The LOAIA provides in relevant part as follows:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La.Rev.Stat. Ann. § 9:2780(B).

(3) The state law must not be inconsistent with Federal law.

*Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1523 (5th Cir.1996) (quoting *PLT*, 895 F.2d at 1047). If all three elements are satisfied, state law applies.

As to the first *PLT* factor, Lytal contends that the controversy in this case "did not arise on an OCSLA situs because plaintiff was injured on a vessel while it was navigating in and on the high seas." *R. 62.* Shaw Global argues that because the accident occurred while the plaintiff was being lowered in a personnel basket attached to a platform-based crane, the OCSLA situs requirement is satisfied under Fifth Circuit jurisprudence.

In support of its position, Shaw Global cites *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1524 (5th Cir.1996). In *Hodgen*, the plaintiff suffered injuries when he attempted to transfer via swing rope from an oil platform to a transport vessel. *Id.* at 1516. The plaintiff was an employee of Operators & Consulting Services ("OCS"), which provided services for the maintenance and operation of defendant Forest Oil Corporation's ("Forest") platforms in the Gulf of Mexico on the Outer Continental Shelf. *Id.* at 1515. OCS and Forest had entered into a contract by which OCS agreed to indemnify Forest if any of OCS's employees were injured as a result of their work for Forest. *Id.* at 1522. The Fifth Circuit found that the situs element under *PLT* was satisfied when "an injured worker is in contact with both a platform and a boat." *Hodgen*, 87 F.3d at 1527; *see also, Leboeuf v. Canal Barge Co., Inc.*, 205 F.Supp.2d

9

561, 565 (E.D.La.,2002)(Barbier, J.)(the situs requirement of OCSLA jurisdiction satisfied wherein the employee had attempted to board a vessel via a personnel basket attached to a crane located on the platform). Like the plaintiffs in *Hodgen* and *Leboeuf*, Cash was injured as he attempted to transfer from the OCSLA platform to a vessel. Thus, the first *PLT* factor is met. *Hodgen* at 1527; *Leboeuf* at 565.

As for the second *PLT* prong, i.e., whether maritime law applies of its own force, the legal framework for determining whether a contract is maritime is set out in *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313 (5th Cir.1990). *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 381 (5th Cir. 2005). *Davis* set out a six-part test to determine how a contract should be characterized:

(1) what does the specific work order in effect at the time of injury provide?
(2) what work did the crew assigned under the work order actually do?
(3) was the crew assigned to work aboard a vessel in navigable waters?
(4) to what extent did the work being done relate to the mission of that vessel?
(5) what was the principal work of the injured worker? and
(6) what work was the injured worker actually doing at the time of injury?

*Davis*, 919 F.2d at 316.

The Fifth Circuit has held that the maritime or non-maritime status of the contract ultimately depends on its "nature and character," not on its place of execution or performance. *Id*. Where the MSC at issue is a "blanket," or preliminary agreement, to be supplemented by work orders calling for the performance of specific services, as in the instant case, the blanket agreement and the specific work order at issue must

be construed together to determine whether maritime law is applicable. *Davis & Sons, Inc. v Gulf Oil Corp.*, 919 F.2d 313, 315 (5th Cir.1990).

While the record does not contain a specific work order, it is undisputed and confirmed by plaintiff's March 8, 2005 deposition and the affidavit of Rusty Barousse, plaintiff's general supervisor at the time of the accident, that plaintiff was working for Shaw Global, performing contracting work for Unocal, in particular painting and sandblasting on the platform facility in OCS waters. *R. 62; 73-2,Depo. of Cash, p. 88; Aff. Of Barousse.* Further, nothing in the record indicates that any of the work was done either in connection with or aboard any vessel. *Dupre v. Penrod Drilling Corp.,* 993 F.2d 474 (5th Cir. 1993)(in order that maritime character should attach, there must be a direct and proximate link between the contract and the operation of a ship); *see also, Dominque v. Ocean Drilling & Exploration Co.*, 923 F.2d 474 (5th Cir. 1991)(the performance of the contract must be "more than incidentally related to the execution of the vessel's mission."). Rather, both parties agree, as further confirmed by plaintiff's deposition testimony and Barousse's affidavit, that the M/V Lytal was used only to transport the Shaw Global employees from Unocal's sleeping platform to its work platform. *R. 62; 73-2 Depo. Of Cash, p. 88; Aff. Of Barousse.* Thus, under the *Davis* factors, the Unocal/Shaw Global MSC constitutes a non-maritime contract, and the second requirement of the *PLT* test is met in this case.

The final *PLT* inquiry is whether the application of Louisiana law, specifically, the Louisiana Oilfield Anti-Indemnity Act, through the OCSLA, conflicts with federal law. "The Fifth Circuit has expressly held that nothing about the Anti-Indemnity Act conflicts with federal law. *See Hodgen*, 87 F.3d at 1528 ('We find nothing in the LOIA inconsistent with federal law.')." *Alleman v. Omni Energy Services Corp.*, 434 F.Supp.2d 405, 414 (E.D.La.,2006)(Vance, J.).

Applying the above principles to the case *sub judice,* the Court concludes that the Unocal/Shaw Global MSC is non-maritime in nature and Louisiana law applies. As Lytal's defense and indemnity claims are expressly precluded by provisions of the LOAIA, Lytal's motion for summary judgment against Shaw Global must be denied.[6]

---

[6] Based on the Court's finding, it is not necessary to address Shaw Global's alternative argument that Lytal's demand for defense and indemnity would violate Section 905(b) of the Longshore and Harbor Workers' Compensation Act.