UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL CASH, ET AL.** | ***CIVIL NO. 6:04-1648** |
| **VERSUS** | ***JUDGE DOHERTY** |
| **UNOCAL CORP., ET AL.** | ***MAGISTRATE JUDGE HILL** |

REPORT AND RECOMMENDATION

The assessment of the amount of attorney's fees owed by Liberty Insurance Underwriters, Inc. ("Liberty") to Max Welders, Inc. ("Max Welders") pursuant to the terms of the Liberty bumbershoot policy has been referred to the undersigned for report and recommendation.

BACKGROUND

Plaintiff, Michael Cash ("Cash"), filed the instant personal injury action against Max Welders and others. Max Welders was represented by the Juneau Firm in the litigation, presumably under the terms of a policy issued by its primary insurance carrier, Lexington Insurance Company ("Lexington"). [rec. doc. 9]. Cash added both Lexington and Liberty as direct defendants in the litigation on October 14, 2008. [rec. doc. 159].

Liberty declined coverage to Max Welders for the claims of Cash by Notice of Declination of Coverage dated February 10, 2009. Thereafter, on May 27, 2009, Max Welders, represented by the law firm of Staines & Eppling, APLC, filed a cross-claim against Liberty, seeking, amongst other relief, coverage under a bumbershoot policy issued by Liberty to Max Welders. [rec. doc. 238].

The main demand was settled on September 23, 2009 when Lexington, the primary insurer of Max Welders, paid its full policy limits of $1,000,000.00, and Max Welders paid an additional $400,000.00 to the plaintiff. Max Welders reserved its rights against Liberty to recover the $400,000.00 it paid to settle the main demand, plus attorney fees. [rec. docs. 322, 323 and 404].

By ruling dated July 25, 2012, the Court found coverage under the bumbershoot policy was owed by Liberty to Max Welders [rec. doc. 398], and subsequently by ruling dated August 13, 2013, the Court determined that Max Welders was additionally entitled to an award of attorneys' fees pursuant to the terms of the bumbershoot policy. [rec. docs. 398, 418 and 419]. Accordingly, Max Welders was directed to file a Motion to Fix Attorneys' Fees, including supporting documentation, which Motion was referred to the undersigned for Report and Recommendation. [rec. doc. 418, and 422].

Max Welders has complied with this Court's Order. [rec. doc. 420]. Liberty has filed Opposition, to which Max Welders filed a Reply. [rec. docs. 423, 428 and 430]. This Report and Recommendation follows.

## GUIDELINES FOR ATTORNEYS' FEES CALCULATION

This action was filed under the Outer Continental Shelf Lands Act ("OCSLA"), which adopts the law of the most adjacent state as surrogate federal law. *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 349 (5th Cir. 1999) *citing Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835 at 1838, 23 L.Ed.2d 360 (1969). The marine insurance policy

at issue is a maritime contract. *Albany Insurance Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991); *St. Paul Fire & Marine Ins. Co. v. Board of Com'rs of Port of New Orleans*, 418 Fed. Appx. 305, *2 (5th Cir. 2011). Nevertheless, in the absence of a specific and controlling federal rule, Louisiana state law governs. *Albany*, 927 F.2d at 886. Therefore, in making the underlying coverage determination, Judge Doherty reviewed the bumbershoot policy under the substantive law of Louisiana. [rec. doc. 398 at pg. 7]. The Fifth Circuit has held that when state law provides the rule of decision for the substantive issues in a case, state law controls both the award of, and the reasonableness of, attorney's fees. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) *citing Kona Technology Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000). Accordingly, as was the case with the Court's coverage determination, the amount of the award of attorney's fees will be determined under Louisiana law.

Under Louisiana law, awards of attorney fees permitted pursuant to contractual provisions are subject to review and control by the courts. Thus, Louisiana courts inquire into the reasonableness of the fee claimed. *Central Progressive Bank v. Bradley*, 502 So.2d 1017, 1017 (La. 1987); *City of Baton Rouge v. Stauffer Chemical Co.,* 500 So.2d 397, 400-401 (La. 1987) ("Louisiana courts have not hesitated to apply the guidelines of Disciplinary Rule 2-106 in their review and control of attorney fees established by contract . . . .); *Helena Chemical Company v. Nichols,* 695 So.2d 990, 994 (La. App. 3rd Cir. 1996); *State Dept. of Transportation & Development v. Williamson,* 597 So.2d 439, 441-442 (La. 1992)*; Fourchon*

*Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1567-68 (5th Cir. 1988). In determining the reasonableness of such fees, the Louisiana courts engage in an analysis using factors comparable to those outlined in the federal jurisprudence.[1] *Robichaux v. Glorioso,* 2000 WL 1171119, *3 (E.D. La. 2000).

Under Louisiana law, the trial court must award a reasonable fee commensurate with the required level of legal services performed. *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679, 690 (5th Cir. 1991). The factors to be considered in fixing attorney's fees can be found in Rule 1.5 of the Louisiana Rules of Professional Conduct. *Southfield Square Homeowners Ass'n, Inc. v. Myers,* 670 So.2d 639, 642 (La. App. 3rd Cir. 1996); *Mayeur v. Campbell*, 666 So.2d 366, 370 (La. App. 1st Cir. 1995); *Davidson, Meaux, Sonnier, McElligott & Swift v. Broadhead*, 649 So.2d 479, 483 (La. App. 3rd Cir. 1994), *writ denied*, 650 So.2d 243 (La. 1995). Under Rule 1.5, excessive attorney's fees are prohibited. *Kem Search v. Sheffield*, 434 So.2d 1067, 1070 (La. 1983).

Rule 1.5 of the Rules of Professional Conduct provides, in pertinent part:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions

---

[1] Under Louisiana law, recoverable fees must be reasonable, and the amount is regulated by the Rules of Professional Responsibility, Rule 1.5(a). *Deutsch, Kerrigan & Stiles v. Fagan*, 665 So.2d 1316, 1323 (La. App. 1st Cir. 1995); *see also Metropolitan Reporters, Inc. v. Avery*, 665 So.2d 547, 550 (La. App. 5th Cir. 1995); *Hoskins v. Ziegler*, 506 So.2d 146, 148 (La. App. 4th Cir. 1976). Under federal law, the factors which guide federal courts within the Fifth Circuit in determining reasonable fee awards are set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

The Fifth Circuit has noted that the language of Rule 1.5, as well as the interpretive state court decisions, have held that the guidelines are permissive and that consideration of each is not mandatory. *Fourchon Docks*, 849 F.2d at 1568.

Under federal law, the determination of reasonable attorney's fees involves a two-step procedure. *Louisiana Power & Light Company v. Kellstrom,* 50 F.3d 319, 324 (5th Cir. 1995), *citing Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. *Id*. Then, the district court must multiply the reasonable hours by the reasonable hourly rates. *Id*. The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case, assessing the dozen factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). *Wegner v.*

*Standard Insurance Company,* 129 F.3d 814, 822 (5th Cir. 1997).

The twelve *Johnson* factors include: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19.[2] Many of the *Johnson* factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, and should not be double counted. *Jason D.W. by Douglas W. v. Houston Independent*, 158 F.3d 205, 209 (5th Cir. 1998). Additionally, the Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors for enhancement purposes and, accordingly, the Fifth Circuit has held that "[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts." *Walker v. U. S. Department of Housing and Urban Development,* 99 F.3d 761, 771-72 (5th Cir. 1996).

---

[2]The Fifth Circuit has not decided whether the factors in *Johnson* should apply in a diversity case to determine the reasonableness of attorney's fees. *See Mid-Continent,* 205 F.3d at 232; *Robichaux v. Glorioso*, 2000 WL 1171119 (E.D. La. 2000). As discussed above, Louisiana courts engage in an analysis similar to *Johnson*, and therefore, the same result is reached under either state or federal analysis. *See, Robichaux, supra.*

The fee applicant bears the burden of proving the reasonableness of the number of hours expended on their prevailing claim. *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990). The party seeking attorney's fees must present adequately documented time records to the court. *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993). Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented. *Id. citing Hensley,* 461 U.S. at 432-34, 103 S.Ct. at 1939. Moreover, hours which result from the case being "overstaffed" or are "excessive, redundant or otherwise unnecessary", even though actually expended, are not hours reasonably expended and are to be excluded from the calculation. *Leroy*, 906 F.2d at 1079 *citing Hensley,* 103 S.Ct. at 1939-40 and *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982) ("there should have been no compensation for hours spent in duplicative activity. . . .").

As can be seen from the above, the lodestar approach as delineated in *Johnson*, and the analysis under Rule 1.5 are very similar. In this case, the undersigned concludes that the result is the same whether under *Johnson* or under Rule 1.5.

## **ANALYSIS**

Max Welders seeks $173,557.75 for the legal services rendered by Anthony Staines, Thomas J. Eppling, Craig W. Brewer, Lance E, Harwell, Corey P. Parenton, Ashley E. Boyd, paralegal Kim Leblanc and unidentified law clerks of the Staines & Eppling APLC law firm from February 19, 2009 through August 15, 2013, and $18,699.60 in expenses, for a total of $192,257.35.

In support of Max Welder's request, counsel submitted the following: copies of billing records describing the tasks performed by each attorney, paralegal and law clerk, from February 19, 2009 through August 15, 2013 and the time allotted to these tasks, and copies of expense records for that same time period, as well as the affidavits of defense counsel, Craig W. Brewer and Corey P. Parenton.

By Opposition, Liberty does not contest the itemization of hours billed by Max Welders or the reasonableness of the rates requested for the tasks performed. Rather, Liberty argues that Max Welders is not entitled to any fees whatsoever. This assertion is based on two arguments: (1) under Louisiana law, attorney fees incurred for pursuit of coverage under an insurance policy are not recoverable, and (2) Max Welders was represented by counsel for its primary insurer during the pendency of plaintiff's claim.

Liberty misapprehends the scope of the issue referred by Judge Doherty to the undersigned. Judge Doherty has already ruled that Max Welders is entitled to recover its attorney's fees. [rec. doc. 418]. Judge Doherty's Ruling in that regard was without limitation on the issues to which the fees related and was without temporal limit. The arguments made by Liberty here were either made to Judge Doherty and rejected, or were not made to Judge Doherty and were thereby waived. In any event, the undersigned is without authority to amend or in any way change or limit Judge Doherty's Ruling.

Accordingly, in accordance with the referral made by Judge Doherty, the fee application made by counsel for Max Welders is analyzed below.

REASONABLE HOURS EXPENDED

Max Welders seeks an award for time spent (1100.65 hours) by its attorneys, a paralegal and law clerks in connection with obtaining the settlement of Cash's claims, said sum representing approximately 311.8 hours legal work by Anthony J. Staines, .5 hours legal work by Thomas J. Eppling, 430.4 hours legal work by Craig W. Brewer, .4 hours legal work by Lance E. Harwell, 12.1 legal work by Corey P. Parenton, .5 hours legal work by Ashley H. Boyd, 286.50 hours work by paralegal Kim E. LeBanc and 58.45 hours work by unidentified law clerks.  Liberty does not contest the reasonableness of the requested hours claimed by the attorneys, paralegal and law clerks for Staines & Eppling, APLC for legal services performed. Moreover, review of the detailed billing records of Staines & Eppling, APLC leads the undersigned to conclude that the requested hours for the work performed are not excessive or duplicative, and are reasonable.

HOURLY RATES CLAIMED

Next, reasonable hourly rates for the Staines & Eppling, APLC attorneys, paralegal and law clerks must be determined.  Anthony J. Staines, who has over 30 years legal experience, and Thomas J. Eppling are a founding senior members in the firm, which routinely handles commercial litigation, including marine and insurance coverage litigation,  have submitted the billing rate of $200.00 per hour;  Craig W. Brewer who practiced with the firm for over fifteen years and has been a member of the firm for ten years, and Lance E. Harwell  have submitted the billing rate of $185.00 per hour; Corey P. Parenton, an associate with the firm and Ashley

9

H. Boyd have submitted the billing rate of $165.00 per hour; and paralegal Kim E. LeBanc and the unidentified law clerks have submitted the billing rate of $85.00 per hour, which is the standard rate that the firm charges all clients in marine and insurance coverage litigation for its non-lawyer support staff.

Attorneys' fees are to be calculated at the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547 (1984). A reasonable rate is the market rate. *Conner v. Mid South Insurance Agency, Inc.,* 943 F. Supp. 663, 667 (W.D. La 1996). The "relevant community" for the purpose of awarding attorney fees is the judicial district in which the litigation occurred. *Jordan v. Allain*, 619 F. Supp. 98, 113 (N.D. Miss. 1985); *Eli Lilly v. Zenith*, 264 F. Supp.2d 753, 763-764 (S,D, Ind. 2003) (collecting cases supporting the use of rates in the community where the forum court is located).

Liberty did not object to the rates billed by the Staines & Eppling, APLC attorneys, paralegal and law clerks. The undersigned is aware of the extensive practice of the law firm of Staines & Eppling, APLC and the general qualifications and experience of lead attorneys Anthony J. Staines and Craig W. Brewer. Moreover, the undersigned is aware of the customary rates of civil lawyers in this district. Therefore, based on this knowledge, the undersigned finds that the rates sought for Max Welders' legal representation in this case is *prima facie* reasonable.

Rule 1.5/ *JOHNSON* ANALYSIS

As set forth above, Rule 1.5 of the Louisiana Rules of Professional Conduct requires virtually the same analysis as is required under *Johnson*. The undersigned will undertake this

analysis under *Johnson,* but the result would be the same under Rule 1.5.

Neither party has addressed the twelve *Johnson* factors. Accordingly, Max Welders does not seek enhancement of the lodestar amount, nor does Liberty seek downward adjustment of the lodestar amount.

A listing of the factors and analysis of each factor as it applies in this case follows. (1) Time and labor involved: the lodestar adequately compensates time and labor involved; (2) Novelty and difficulty of the questions: neither the facts, nor the underlying legal theories involved in this case, were novel or difficult; (3) The skill required to perform the legal services properly: the hourly rate adequately compensates counsel for the level of skill required to handle this case competently; (4) Preclusion of other employment: there is no evidence that the handling of this case precluded counsel from handling of other cases; (5) Customary fee: in accordance with the above analysis, the hourly rates awarded herein fall within the current applicable range; (6) Fixed or contingent fee: this case was billed on an hourly basis; thus, this factor does not justify adjustment;[3] (7) Time limitations: there were no extraordinary time limitations or onerous circumstances presented or imposed;[4] (8) The time involved and the results obtained: Max Welders' counsel were able to obtain a settlement within the Liberty policy limits within a reasonable amount of time; thus, the lodestar adequately compensates for this factor; moreover, as the Supreme Court has greatly limited the use of this factor. *Walker,* 99 F.3d at 771; (9) The

---

[3] In *Walker,* 99 F.3d at 772, the Fifth Circuit noted that the Supreme Court has barred any use of the sixth factor. *Id*. citing *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 2643, 120 L.Ed.2d 449 (1992) and *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir.), *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993).

[4] The seventh factor is subsumed in the number of hours reasonably expended. *Walker,* 99 F.3d at 772.

11

experience, reputation and ability of counsel: the Staines & Eppling, APLC counsel involved in this litigation enjoy the reputation of providing competent representation; the lodestar, however, adequately compensates for this factor; (10) The undesirability of the case: no evidence was adduced on this point; (11) The nature and length of the professional relationship with the client: there is no evidence of any prior professional relationship between Max Welders and Staines & Eppling, APLC; moreover, the lodestar adequately compensates for this factor ; (12) Awards in similar cases: there is no evidence that the award of fees sought herein exceeds the amount awarded in similar cases, to the contrary, in light of the above analysis, the award sought herein is minimal and entirely reasonable.

The lodestar is presumptively reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct 2638, 2641, 120 L.Ed.2d 449 (1992). This is not such a case; the lodestar requires no adjustment.

EXPENSES

Finally, the request for expenses totaling $18,699.60 must be addressed. These amounts include charges for photocopying, depositions, transcripts, facsimile transmissions, electronic research, and parking and travel expenses, as well as courier fees, expert fees, and mediation expenses. Liberty has failed to file specific objections to Max Welders' request for expenses. Further, a review of the billing statements submitted by Max Welders indicates that the expenses appear reasonable. Finally, the Liberty policy provides for reimbursement of these expenses because they were "paid as a consequence" of a covered occurrence under the policy, and do not appear to have been "covered by the terms of other insurance". Accordingly, the undersigned

recommends that Max Welders be awarded $18,699.60 in expenses.

CONCLUSION

For the reasons assigned hereinabove, it is recommended that the sum of $173,557.75 in attorney's fees and $18,699.60 in expenses be awarded to Max Welders.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.** *Douglass v. United Services Automobile Association*, **79 F.3d. 1415 (5th Cir. 1996)**.

Signed this 5th day of December, 2013 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent: RFD
On: 12/5/2013
By: MBD