RECEIVED
MAR 1 1 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL CASH, ET AL. | CIVIL ACTION NO. 04-1648 |
| VERSUS | JUDGE DOHERTY |
| UNOCAL CORPORATION, ET AL. | MAGISTRATE JUDGE HILL |

## RULING

The "Motion to Fix Attorneys' Fees" [Doc. 420], filed by Max Welders, Inc. ("Max Welders") was referred to United States Magistrate Judge C. Michael Hill for Report and Recommendation. [Doc. 418, p. 19] A Report and Recommendation issued on December 5, 2013, whereby the Magistrate Judge recommended Max Welders be awarded $173,557.75 in attorneys' fees and $18,699.60 in expenses. [Doc. 431] Liberty Insurance Underwriters, Inc. ("Liberty") has filed objections to the Report and Recommendation, and Max Welders has filed a response thereto. [Docs. 432, 433] After an independent review of the record, and considering the objections filed, the Court declines to adopt the Report and Recommendation for the reasons that follow.

I.      **Factual and Procedural Background**[1]

In August 2003, plaintiff Michael Cash was injured during a personnel basket transfer conducted by a crane operator employed by Max Welders. Michael Cash subsequently filed this lawsuit against, among others, Max Welders, Max Welders' primary insurer Lexington Insurance Company ("Lexington"), and Max Welders' excess "bumbershoot" insurer Liberty Insurance

---

[1] For a more detailed discussion of the factual and procedural background in this matter, see Rec. Doc. 398.

1

Underwriters, Inc. ("Liberty"). Thereafter, Max Welders filed a cross-claim against Liberty, seeking, amongst other relief, coverage under the "Marine Excess Liability ('Bumbershoot') Policy" issued by Liberty to Max Welders. [Docs. 238, 362-2, p. 3] On September 23, 2009, the main demand was settled, with Lexington agreeing to pay plaintiff its full policy limits of $1,000,000.00, Max Welders agreeing to pay $400,000.00, and other defendants agreeing to pay $50,000.00.

Thereafter, Max Welders filed a "Motion for Post-Ruling Relief" [Doc. 413], seeking from Liberty recovery of the $400,000.00 Max Welders paid to plaintiff, interest on the $400,000.00 from the date of payment, "and attorneys' fees incurred by Max Welders in defending Michael Cash's claims." [Doc. 413-1, p. 1] The Court subsequently granted Max Welders' motion for post-ruling relief, determining coverage was owed by Liberty to Max Welders, Max Welders was entitled to reimbursement of its settlement contribution of $400,000.00, as well as interest on that amount, and Max Welders was entitled to an award of attorneys' fees pursuant to the terms of the bumbershoot policy. [Docs. 398, 418] In light of the foregoing, Max Welders was instructed to file a motion to fix attorneys' fees; that motion was referred to the Magistrate Judge for Report and Recommendation. [Doc. 418, p. 19]

On December 5, 2013, the Magistrate Judge issued his Report and Recommendation, and recommended therein that Max Welders be awarded $173,557.75 in attorneys' fees and $18,699.60 in expenses, for a total recovery of total of $192,257.35. [Doc. 431, p. 7] Importantly, the foregoing monetary amount requested by Max Welders includes "two broad categories of legal work": (1) costs and fees incurred by Max Welders for "potentially uninsured exposure" - *i.e.* defending Max

2

Welders against the claims of Michael Cash[2]; and (2) "legal fees associated with challenging, and ultimately obtaining, coverage from Liberty. . . ." [Doc. 420-2, p. 3] In analyzing the claim, the Magistrate Judge found as follows:

> By Opposition, Liberty does not contest the itemization of hours billed by Max Welders or the reasonableness of the rates requested for the tasks performed. Rather, Liberty argues that Max Welders is not entitled to any fees whatsoever. This assertion is based on two arguments: (1) under Louisiana law, attorney fees incurred for pursuit of coverage under an insurance policy are not recoverable, and (2) Max Welders was represented by counsel for its primary insurer during the pendency of plaintiff's claim.
>
> Liberty misapprehends the scope of the issue referred by Judge Doherty to the undersigned. Judge Doherty has already ruled that Max Welders is entitled to recover its attorney's fees. [rec. doc. 418]. Judge Doherty's Ruling in that regard was without limitation on the issues to which the fees related and was without temporal limit. The arguments made by Liberty here were either made to Judge Doherty and rejected, or were not made to Judge Doherty and were thereby waived.[3] In any event, the undersigned is without authority to amend or in any way change or limit Judge Doherty's Ruling.

[Doc. 431, p. 8] The Magistrate Judge then conducted a review of the fees requested, and found them to be reasonable pursuant to both Louisiana and federal law. [Id. at 9-13]

In this Court's Ruling on Max Welders' motion for post-ruling relief, after analyzing the language of Liberty's bumbershoot policy, the Court stated as follows:

> [T]he policy . . . reads: "'**Damages**' shall mean . . . all sums paid as salaries, wages, compensation, fees, charges and law costs . . . <u>where same are paid as a consequence of any occurrence covered hereunder</u>. . . ." Thus, by its own terms, the policy shall

---

[2] According to Max Welders, "Following Liberty's declination to Max Welders on February 10, 2009, undersigned counsel was engaged to represent Max Welders for any and all exposure above the $1 million primary limit of the underlying Lexington policy. This work resulted in a settlement contribution by Max Welders of $400,000.00 to Michael Cash." [Doc. 420-2, p. 3]

[3] For reasons which will be discussed, the Court notes Liberty's arguments were neither rejected by this Court, nor waived by Liberty, as Max Welders never indicated to Liberty or the Court it intended to assert a claim for attorneys' fees incurred in pursuit of coverage *until* Max Welders filed the Motion to Fix Attorneys' Fees.

3

> indemnify the insured for damages "paid as a consequence of any occurrence covered hereunder." . . . In this matter, there was a "settlement adjustment" of a claim, and this Court previously found that claim constitutes an "occurrence" covered under the Liberty policy.
>
> [The policy] provides that damages include "all sums paid as law costs, . . . for . . . lawyers . . . and for litigation, settlement adjustment and investigation of claims and suits where same are paid as a consequence of any occurrence covered hereunder, . . . excluding any part of such expenses for which the Insured is covered by the terms of other insurance. Again, in this matter there was a covered occurrence (*i.e.* the underlying claim of Michael Cash), which ultimately resulted in a $1,450,000 (one million four hundred fifty thousand dollars) settlement. . . . Once Max Welders' primary insurer paid $1,000,000 on behalf of Max Welders to settle Michael Cash's personal injury claim, the limits of the primary insurer's policy were exhausted, and thus, Max Welders' attorneys' fees were no longer "covered by the terms of other insurance."
>
> In light of the foregoing, the Court finds Max Welders is entitled to an award of attorneys' fees, pursuant to the terms of the Liberty bumbershoot policy.

[Doc. 418, pp. 17-19 (citations omitted; emphasis in original)]

The Court acknowledges it would have been clearer had the Court stated, "In light of the foregoing, the Court finds Max Welders is entitled to an award of attorneys' fees [*incurred in defense of the claims asserted by Michael Cash, after the limits of the primary policy were exhausted*], pursuant to the terms of the Liberty bumbershoot policy." However, at the time this Court issued its Ruling, *it was unaware Max Welders intended to pursue a claim for reimbursement of the costs it incurred in pursuing coverage*, as Max Welders had given no indication to this Court it intended to pursue such a claim. Indeed, as previously noted, the motion which this Court granted specifically requested "attorneys' fees incurred by Max Welders *in defending Michael Cash's claims*"; no request was lodged for attorneys' fees incurred in pursuing coverage.[4] [Doc. 413-

---

[4] It is additionally noted all prior statements of Max Welders regarding its claim for attorneys' fees likewise indicated Max Welders was solely seeking reimbursement of attorneys' fees incurred in defending Max Welders' excess exposure to the claim of Michael Cash. *See e.g.* Doc. 407, pp. 21-22

4

1, p.1 (emphasis added)] Moreover, it is well-established under Louisiana law that attorneys' fees incurred in pursuing coverage are the insured's alone to bear, provided, of course, the insurance contract does not obligate the insurer to reimburse the insured for its efforts in establishing coverage, thus, absent any indication to the contrary, the Court had not anticipated Max Welders would assert a claim for reimbursement of its attorneys' fees incurred *in pursuing coverage*. *See e.g. Steptore v. Masco Construction Co., Inc.*, 643 So.2d 1213, 1218 (La. 1994)("Generally, if the insured hires an attorney to represent him in coverage disputes, he will have to bear those costs himself"); *Shaffer v. Stewart Const. Co., Inc.*, 865 So.2d 213, 219-20 (La. App. 5 Cir. 2004); *Menard v. Lafleur*, 737 So.2d 844, 846 (La. App. 3 Cir. 1999); *Tillman v. Custom Aggregate*, 686 So.2d 118, 119-20 (La. App. 1 Cir. 1996); *Gleason v. State Farm Mut. Auto. Ins. Co.*, 660 So.2d 137, 144 (La. App. 2 Cir. 1995); *Breitenbach v. Green*, 186 So.2d 712, 720-21 (La. App. 4 Cir. 1966); *National Union Fire Ins. Co. Of Pittsburgh, PA v. Circle, Inc.*, 915 F.2d 986, 991 (5th Cir. 1990).

The relevant portions of the policy issued by Liberty provide as follows: "The Policy shall indemnify the Insured . . . for . . . [a]ll other sums which the Insured shall become legally liable to

---

("[U]nder the policy we'd be entitled to reimbursement of attorney's fees for defending the company"; "[T]he company is entitled to a defense from the excess exposure"]; *see also* Doc. 413-1, p.4 ("In this matter, Max Welders incurred attorneys' fees and litigation expenses to obtain the $400,000.00 settlement which this Honorable Court has ruled is covered under the policy. Accordingly, it is respectfully submitted that the attorneys' fees and expenses are included and are covered under the policy as part of Max Welders' *Ultimate Net Loss* arising from Michael Cash's occurrence.")(emphasis in original).

It is additionally apparent from previous statements made by this Court that the Court was unaware Max Welders intended to seek reimbursement of attorneys' fees incurred in pursuing coverage. *See e.g.* Doc. 407, pp. 23-24 ("I'm assuming you [Max Welders] would be saying you want that portion of the defense of Max Welders that might be attributable to the obligation that the bumbershoot policyholder had to provide a defense."); *id.* at 78 ("And quite frankly, what it seems to me is truly at issue here for Mr. Brewer's standpoint is attorney's fees but you're not going to get the whole amount of your attorney's fees anyway, Mr. Brewer, because Lexington [the primary insurer] plays a role in this. But its some portion of your attorney's fees that might or might not be owed.")

5

pay as damages on account of: . . . personal injuries . . . caused by or arising out of each occurrence happening anywhere in the world[.]" [Doc. 412-5, p. 83] The policy defines damages, in pertinent part, as: "all sums paid as salaries, wages, compensation, fees, charges and law costs, . . . for . . . lawyers . . . and other persons and for litigation, settlement adjustment and investigation of claims and suits where same are paid as a consequence of any occurrence covered hereunder, . . . excluding any part of such expenses for which the Insured is covered by the terms of other insurance[.]" [Id. at 84] "Occurrence" is defined as "an event . . . which . . . causes injury, damages or destruction during the Policy Period which was unexpected by the Insured." [Id. at 85] Accordingly, the policy provides indemnification for "law costs, . . . litigation, [and] settlement adjustment . . . <u>where same are paid as a consequence of any occurrence covered hereunder</u>." [Id. at 84 (emphasis added)] In this matter, as previously recognized by this Court, the "occurrence covered" by the policy was the personnel basket transfer which resulted in injuries to Michael Cash. [Doc. 398, pp. 12-34; Doc. 418, p. 18] The covered occurrence was <u>not</u> the litigation commenced by Max Welders against Liberty in pursuit of coverage under the policy. Accordingly, the Court finds the policy language does not obligate Liberty to pay for the costs and expenses associated with Max Welders' pursuit of coverage.

In light of the foregoing, the "Motion to Fix Attorneys' Fees" [Doc. 420] is REMANDED to the Magistrate Judge for issuance of a Report and Recommendation in conformity with the clarification granted by this Ruling. Specifically, it is requested the Magistrate Judge make a recommendation as to the amount of attorneys' fees, if any, which Max Welders incurred *in defending against the claims of Michael Cash, after the limits of the primary policy issued by*

*Lexington were exhausted.*

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this __11__ day of __March__, 2014.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

SENT
3-12-14
BY: cog
TO: CMH/mbd