UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL CASH, ET AL.** | \*CIVIL NO. 6:04-1648 |
| **VERSUS** | \*JUDGE DOHERTY |
| **UNOCAL CORP., ET AL.** | \*MAGISTRATE JUDGE HILL |

<u>REPORT AND RECOMMENDATION</u>

The assessment of the amount of attorney's fees owed by Liberty Insurance Underwriters, Inc. ("Liberty") to Max Welders, Inc. ("Max Welders") pursuant to the terms of the Liberty bumbershoot policy has been remanded to the undersigned for report and recommendation.

<u>BACKGROUND</u>

Plaintiff Michael Cash ("Cash") filed the instant personal injury action against Max Welders and others. Max Welders was represented by the Juneau Firm in the litigation, presumably under the terms of a policy issued to its primary insurance carrier, Lexington Insurance Company ("Lexington"). [*See* rec. doc. 9]. Cash added both Lexington and Liberty as direct defendants in the litigation on October 14, 2008. [rec. doc. 159].

Liberty refused coverage to Max Welders for the claims of Cash by Notice of Declination of Coverage dated February 10, 2009. Thereafter, on May 27, 2009, Max Welders, represented by the law firm of Staines & Eppling, APLC filed a cross-claim against Liberty, seeking, amongst other relief, coverage under a bumbershoot policy issued by Liberty to Max Welders. [rec. doc. 238].

On September 23, 2009, the terms of a *Gasquet*[1] settlement of the main demand by Cash were read into the record, as a result of which, Lexington, the primary insurer of Max Welders, was to pay its full policy limits of $1,000,000.00, and Max Welders was to pay an additional $400,000.00, with Cash reserving his rights against Liberty and Max Welders, but only to the extent of collectible excess insurance coverage from Liberty. At the request of the parties, the Court entered an Order of Partial Dismissal without prejudice, allowing the settling parties additional time within which to file a Motion to Dismiss. [rec. docs. 322, 323, 404; see *also* rec. doc. 440-1].

In November, 2009, Motions to set expert fees for the depositions of Dr. Gorman (plaintiff's life care expert) and Dr. Waring (defendant's pain management expert), taken on August 17, 2009 and September 1, 2009, respectively, were filed. [rec. docs. 324 and 328].

On November 25, 2009, Cash moved to establish a trust fund for the settlement funds; the Motion was granted December 8, 2009. [rec. doc. 330 and 339].

On May 3, 2009, Cash, Lexington and Max Welders filed a Motion for Partial Dismissal, seeking dismissal of the main demand by Cash with prejudice, reserving Cash's claim against Max Welders "only to the extent of collectible insurance coverage" provided by Liberty. [rec. doc. 349]. Dismissal, as prayed for, was granted on May 11, 2010. [rec. doc. 350].

With the exception of Cash's claim against Liberty and Max Welders only to the extent of collectible insurance coverage provided by Liberty, the Settlement Agreement executed by

---

[1] *Gasquet v Commercial Union Ins., Co.,* 391 So.2d 466 (La. App. 4th Cir. 1980).

2

Cash released and discharged all claims and causes of action resulting from the accident at issue for Cash himself, and his "predecessors, successors, agents, heirs, relatives, assigns and anyone else acting on [his] behalf" against the settling parties. [rec. doc. 440-1, pg. 10 ¶ 7].

Cash died on September 5, 2010; the Estate of Michael Wayne Cash was added as the proper party plaintiff in April, 2011. [rec. docs. 366, 385, 386].

By ruling dated July 25, 2012, the Court found coverage under the bumbershoot policy was owed by Liberty to Max Welders [rec. doc. 398] and subsequently, by ruling dated August 13, 2013, the Court determined that Max Welders was additionally entitled to an award of attorneys' fees pursuant to the terms of the bumbershoot policy. [rec. docs. 398, 418 and 419].

On October 16, 2012, the parties participated in a settlement conference in an attempt to resolve the outstanding claims of Cash against Liberty and Max Welder's cross-claim against Liberty. The demand by Cash against Liberty was settled; the cross claim was not. [rec. docs. 408 and 410].

The undersigned issued a Report and Recommendation on Max Welders' Motion to Fix Attorneys' Fees on December 5, 2013, recommending that Max Welders receive all of its requested fees and expenses. [rec. doc. 431.  After the filing of Objections by Liberty, on March 11, 2014, Judge Doherty limited Max Welder's award of attorney's fees to those incurred after the claims of Cash were settled, and those fees incurred solely in defending the claims of Cash, excluding those fees associated with the pursuit of coverage under the Liberty policy; the matter was remanded to the undersigned for determination. [rec. doc. 434].

After a telephone status conference with the undersigned, Max Welders filed a Memorandum in support of its revised and narrowed request for an award of attorneys' fees and expenses. [rec. doc. 439]. Liberty has filed Opposition. [rec. doc. 440]. This Report and Recommendation follows.

## ANALYSIS

Max Welders now seeks $6,420.00 for the legal services rendered by Craig W. Brewer and Anthony John Staines of Staines & Eppling, APLC law firm, and $2,630.72 in expenses, for a total of $9,050.72. Max Welders claims that these fees and expenses represent "additional efforts following settlement with Cash . . . the implications on the settlement agreement following Cash's death . . . and efforts to keep Max Welders abreast of the developments in this matter, inclusive of issues concerning Cash's death and the potential for a survival action."

In support of Max Welder's request, counsel submitted the affidavit of paralegal Kim LeBlanc, copies of edited and redacted billing records describing the tasks performed by each attorney and the time allotted to these tasks, the first entry dated October 1, 2009 and the last entry dated August 17, 2012, a spreadsheet of the requested fees, and a spreadsheet of requested expenses.

By Opposition, Liberty argues that no fees or expenses may be awarded because "the moment that Lexington's duty to defend ended coincides with the moment that Cash's ability to recover from Max Welders ended." More specifically, Liberty argues that Lexington's involvement on behalf of Max Welders via representation by the Juneau law firm continued

through May 11, 2010 when the settlement was funded and the claims of Cash dismissed by the Court with prejudice; after May 11, 2010, Liberty argues there was no claim by Cash for Max Welders to defend against.

Liberty further argues that there is no basis for recovery of fees by Max Welders after Cash's death because the sole surviving claim of Cash or his heirs was limited to the extent of collectible insurance provided by Liberty.

Finally, Liberty argues that various entries on the redacted billing records are not recoverable, including entries for fees and costs related to expert fees for the depositions of Dr. Gorman and Dr. Waring, which were taken before the settlement of Cash's claims and fees and expenses with the October 16, 2012 settlement conference, at which Cash's claim against Liberty was settled, while no settlement was reached on the cross claim by Max Welders against Liberty.

The undersigned has reviewed the redacted billing statements submitted by Max Welders. In light of the above procedural history, it is clear that no fees or costs may be awarded prior to the September 23, 2009, the day that the terms of the settlement were recited in open court. On that date, Lexington agreed to pay its full $1,000,000.00 policy limit to settle the claims of Cash. Thus, September 23, 2009 is the date on which Max Welders' underlying insurance was exhausted.

The Court would accept Liberty's argument that no fees be awarded if the settlement was within the underlying $1,000,000.00 of coverage. The terms of the settlement, however,

required Max Welders to contribute an additional $400,000.00 toward the settlement, which funds were not covered under the Lexington policy.  Thus, neither Lexington nor the Juneau firm was responsible for representing Max Welders with respect to these funds. Rather, after September 23, 2009, the Juneau firm's representation of Max Welders was limited to the extent of Lexington's coverage, $1,000,000.00.

To conclude the settlement, the settling parties were required to confect and execute a settlement agreement and to draft and file a motion to dismiss.  Because Liberty had refused coverage to Max Welders, it was necessary for Max Welders to retain independent counsel to protect its uninsured interest and finalize that portion of the settlement which was uninsured. Under these circumstances, the undersigned will award attorney's fees to Max Welders for work performed in connection with finalizing the settlement agreement, that is, work associated with the drafting and execution of the settlement agreement, the drafting and filing of the motion to dismiss and Cash's establishment of a trust fund for the settlement proceeds.

The undersigned agrees with Liberty, however, that Max Welders may not recover any fees associated with Cash's death.  Dismissal was granted, as prayed for, on May 11, 2010.  On that date, there was no longer any viable claim which could be asserted against Max Welders, and specifically, no survival action as suggested by Max Welders.  While Max Welders remained named in the litigation, there was no possibility of recovery of any amount from Max Welders because the sole surviving claim of Cash or his heirs was limited to the extent of collectible insurance provided by Liberty.  Thus, there was no claim by Cash for Max Welders

to defend against.  The undersigned therefore will not award attorney's fees to Max Welders for work performed after May 11, 2010 related to the death of Cash.

The undersigned also will not award an amounts for work performed in connection with the expert fees for the depositions of Dr. Gorman and Dr. Waring.  The record clearly demonstrates that these depositions were taken before the settlement of Cash's claims and, more specifically, before the underlying limits of the Lexington policy had been exhausted, when Max Welders was fully represented in this lawsuit by the Juneau firm.

Finally, the undersigned will not award any fees or expenses associated with the October 16, 2012 settlement conference.  The record is clear that the appearance of independent counsel for Max Welders at the conference was necessitated by the cross-claim by Max Welders against Liberty.  As such, these fees and expenses are related to the coverage dispute and are therefore not within the scope of Judge Doherty's ruling.

With these parameters in mind, the Court now addresses the amount of attorney fees which should be awarded to Max Welders.

**GUIDELINES FOR ATTORNEYS' FEES CALCULATION**

In the prior Report and Recommendation, the undersigned set forth the procedure for determining the amount of the award of attorney's fees under both Louisiana law pursuant to Rule 1.5 of the Rules of Professional Conduct and federal law utilizing the lodestar approach as delineated in *Johnson*.[2]  The undersigned adopts that the law and reasoning set forth therein.

---

[2] *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).

**REASONABLE HOURS EXPENDED**

Max Welders seeks an award for legal work by Anthony J. Staines and Craig W. Brewer.  In accordance with the above analysis, excluding those entries for work which is not recoverable, results in a request for 5.3 hours legal work by Anthony J. Staines, and 11.5 hours legal work by Craig W. Brewer.  Review of the detailed billing records of Staines & Eppling, APLC leads the undersigned to conclude that these requested hours for the work performed are not excessive or duplicative, and are reasonable.

**HOURLY RATES CLAIMED**

In the prior Report and Recommendation, the undersigned found that the rates charged by both Anthony J. Staines ($200.00 per hour) and Craig W. Brewer ($185.00 per hour) were reasonable.  The undersigned adopts that the law and reasoning set forth therein, and again finds that the rates charged by both Anthony J. Staines ($200.00 per hour) and Craig W. Brewer ($185.00 per hour) are reasonable.

**Lodestar Summary**

In light of the above, the undersigned recommends that the fees be calculated as follows: $1,060.00 (5.3 hours at Anthony J. Staines' reasonable hourly rate of $200.00), plus $2,127.50 (11.5 hours at Craig W. Brewers' reasonable hourly rate of $185.00), for a total of $3,187.50.

**Rule 1.5/ *JOHNSON* ANALYSIS**

As was the case with the undersigned's prior determination, neither party has addressed the twelve *Johnson* factors.  Max Welders does not seek enhancement of the lodestar amount,

nor does Liberty seek downward adjustment of the lodestar amount. In the prior Report and Recommendation, the undersigned engaged in a detailed analysis of the *Johnson* factors, and found that this case was not exceptional and that the lodestar required no adjustment. The undersigned adopts the law and reasoning of the prior Report and Recommendation and again finds found that this case is not exceptional and that the lodestar requires no adjustment.

**EXPENSES**

Finally, the request for expenses totaling $2,630.72 must be addressed.[3] These amounts include charges for photocopying, transcripts, facsimile transmissions, telephone, postage, electronic research, pacer usage, as well as courier fees, travel expenses and mediation expenses.

Other than expenses relating to the expert deposition fees of Dr. Gorman and Dr. Waring and those associated with the October 16, 2012 settlement conference, which the undersigned has ruled are not recoverable, Liberty has failed to file specific objections to Max Welders' request for expenses.[4] Further, Max Welders has not provided detailed documentation to enable the undersigned to definitively determine that all of the requested expenses fall within the scope of those allowed by Judge Doherty.

---

[3]The policy provides for reimbursement of these expenses because they were "paid as a consequence" of a covered occurrence under the policy, and do not appear to have been "covered by the terms of other insurance".

[4]Liberty objects to "costs related to the deposition of Wilton Morvant and [his] 'appearance fee'" on June 15, 2009 and July 24, 2009. However, these expenses are not included in Max Welder's spreadsheet of requested expenses.

A review of the billing statements and spreadsheet submitted by Max Welders, however, indicates that the approximately half of the expenses for copies, faxes, courier, pacer and telephone were incurred after May 11, 2010 when the court dismissed Cash's claims against Max Welders, that all of the Westlaw expenses were incurred after May 11, 2010, and that one of the two entries for transcript costs was for a transcript of an August 14, 2012 conference before Judge Doherty. Accordingly, on the showing made, the undersigned concludes that those expenses are not recoverable. The undersigned therefore recommends that Max Welders be awarded $1,660.87 in expenses.[5]

## CONCLUSION

For the reasons assigned hereinabove, it is recommended that the sum of $3,187.50 in attorney's fees and $1,660.87 in expenses, for a total of $4,848.37, be awarded to Max Welders.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.**

---

[5]This sum represents the following: $126.50 photocopies; $445.00 faxes; $46.50 courier (FedEx); $10.80 pacer; $4.34 postage; $2.10 telephone; $233.60 transcript; $792.03 mediation fee paid directly by Max Welders.

*Douglass v. United Services Automobile Association*, **79 F.3d. 1415 (5th Cir. 1996)**.

Signed this 26th day of May, 2014 at Lafayette, Louisiana.

*C. Michael Hill* (signature)

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

```
Copy sent:  RFD
On:  5/27/2014
By:  MBD
```